JOSE ALANIS AND LIDIA ALANIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alanis v. Commissioner
Docket No. 3184-93
United States Tax Court
T.C. Memo 1995-263; 1995 Tax Ct. Memo LEXIS 264; 69 T.C.M. (CCH) 2900; June 14, 1995, Filed *264 Decision will be entered under Rule 155. Jose Alanis and Lidia Alanis, pro sese. For respondent: Gerald L. Brantley. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1989 in the amount of $ 15,376.97 and an addition to tax under section 6662(a)[1] in the amount of $ 3,000.79. The issues for decision are: (1) Whether respondent's notice of deficiency was arbitrary. We hold it was not. (2) Whether petitioners had unreported income for the tax year 1989. We hold they did to the extent set out below. (3) Whether petitioners are liable for an addition to tax under section 6662(a). We hold they are to the extent set out below. FINDINGS OF FACT The parties have stipulated some of the facts. The stipulation of facts and its accompanying exhibits are *265 incorporated into our findings by this reference. Jose and Lidia Alanis (petitioners) resided in Mission, Texas, at the time the petition was filed. Petitioners are married and filed a joint Federal income tax return for 1989. During the early morning hours of September 2, 1989, Officer Eddie Perez (E. Perez), a patrolman with the Alice Texas Police Department, stopped petitioners' truck on State Highway 281 near Alice, Texas. During the course of the stop, Officer E. Perez conducted a search of the truck. While searching the truck, Officer E. Perez noticed a large amount of currency on the middle console inside the truck. After observing the currency, Officer E. Perez placed two radio calls for additional law enforcement personnel. Officer E. Perez called Officer Anacito Perez, Jr. (A. Perez), who was in the narcotics division of the Alice Police Department, and he called the U.S. Border Patrol. When Officer A. Perez arrived at the scene, he was briefed by Officer E. Perez. Officer A. Perez also viewed the money on the middle console inside petitioners' truck. Border Patrol Agent Sammy Posada (Posada) also responded to Officer E. Perez's call. Posada, who is a canine handler, *266 arrived at the scene with his dog, Hector. Hector is a specially trained dog that "alerts", i.e., gives a signal to its handler, when it detects the odor of illegal narcotics. Before conducting the canine search, Posada was told by a police officer that the officer had discovered a large quantity of money, but the officer did not tell Posada where the money was located. Hector alerted Posada to the presence of the odor of illegal narcotics in the following places: On the driver's side door handle, the middle console inside the truck (where the money was located), and on two suitcases which were in the back of the truck. Posada opened the suitcases, and he observed a small amount of a leafy substance in each suitcase. Posada crumpled the leafy substance in his hand, noticing an odor which he recognized as marijuana. Based on the foregoing events, petitioner husband was arrested for illegal investment and transported to the Alice Police Department for booking. Officer A. Perez prepared a case charging the petitioner husband with criminal illegal investment and presented it to the District Attorney's Office. Upon receipt of the case, the district attorney determined that he did *267 not have sufficient evidence of the criminal offense of illegal investment to prove the case beyond a reasonable doubt; however, he believed he had enough evidence to prove a civil charge of illegal investment, which could result in forfeiture of the confiscated money. On November 15, 1989, petitioner husband signed an Agreed Judgment of Forfeiture relating to the $ 43,004 seized during his September arrest. Under the terms of the agreement, petitioner husband received $ 18,402, and $ 24,602 was forfeited to Jim Wells County, Texas. Respondent determined that petitioners had $ 54,630 of unreported income for 1989, including the $ 43,004 which was the subject of the Agreed Judgment of Forfeiture. OPINION Issue 1. Whether Respondent's Notice of Deficiency Was Arbitrary
Respondent determined that petitioners had a deficiency of $ 15,376.97 for the tax year 1989. Petitioners argue that respondent's determination was arbitrary. A statutory notice of deficiency ordinarily carries with it a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Due to this presumption, taxpayers generally have both the burden of proof *268 and the burden of going forward with evidence. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984). However, if the taxpayer shows that the statutory notice is arbitrary or without foundation, the burden of going forward with the evidence is shifted to the Commissioner. Id.
In asking this Court to find that the notice of deficiency was arbitrary, petitioners are asking us to explore the factual underpinnings of the notice. As a general rule, this Court will not look behind the statutory notice to examine the evidence used by the Commissioner in making her determination. Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989). However, a limited exception to this rule applies where the Commissioner alleges that the taxpayer has unreported income. Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68; Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Carson v. United States, 560 F.2d 693, 696 (5th Cir. 1977); *269 Schad v. Commissioner, 87 T.C. 609, 618 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987). The often-cited authority in cases which address the issue of whether a notice of deficiency was issued arbitrarily is Weimerskirch v. Commissioner, supra. In Weimerskirch, the Commissioner determined that the taxpayer had a deficiency in his income tax based on a revenue agent's finding that the taxpayer omitted income derived from heroin sales. The only evidence supporting this determination consisted of statements made to the revenue agent by two confidential informants and certain information obtained by the revenue agent from law enforcement officials. No admissible evidence was introduced at the trial to substantiate this information. Under those facts, the Court of Appeals refused to sustain the Commissioner's determination, stating that a "deficiency determination which is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous." Id. at 362. In Schad v. Commissioner, supra, *270 the taxpayer was arrested attempting to purchase 600 pounds of marijuana. During the course of the arrest, State law enforcement agents seized approximately $ 174,679 in currency from the taxpayer. Based primarily on the currency seized from the taxpayer, the Commissioner determined that the taxpayer had unreported taxable income. Relying on Weimerskirch v. Commissioner, supra, the taxpayer in Schad argued that the deficiency notice was arbitrary and therefore not entitled to the presumption of correctness. In addressing this argument, we noted that in "the Weimerskirch line of cases, the taxpayers were not shown by admissible evidence to have actually possessed any of the funds that the Commissioner determined to be taxable income." Schad v. Commissioner, supra at 619. Thus, we distinguished the Weimerskirch line of cases by noting "that petitioner had in his possession * * * cash in the amount of $ 174,679". Id. Thus, we held that "connecting petitioner to the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous." *271 Id. at 620. Since an appeal in this case lies in the Court of Appeals for the Fifth Circuit, we also look to cases decided by that court for guidance in this case. Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In Portillo v. Commissioner, supra, the Court of Appeals for the Fifth Circuit noted that, like this Court, it is reluctant to look at the facts underlying the Commissioner's notice of deficiency. However, the Court of Appeals also found that it will "not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present some predicate evidence supporting its determination." [2]Id. at 1133. More specifically, the Court of Appeals articulated its rule as follows: before we will give the Commissioner the benefit of the presumption of correctness, he must engage in one final foray for truth in order to provide the court with some indicia that the taxpayer received unreported income. The Commissioner would merely need to attempt *272 to substantiate the charge of unreported income by some other means, such as by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds. * * * [Id. at 1133-1134; emphasis added.]
In the instant case, respondent's deficiency determination was not arbitrary; respondent has provided the Court with some indicia that petitioners received unreported income. Specifically, respondent has substantiated her charge of unreported income through use of the bank deposits and cash expenditures method of income reconstruction. See Portillo v. Commissioner, supra.Furthermore, respondent has shown *273 that petitioners actually possessed the funds which form the basis of the deficiency. See Schad v. Commissioner, supra.
Since respondent's deficiency notice was not arbitrary, petitioners have the burden of proof and the burden of going forward with the evidence. Issue 2. Whether Petitioners Had Unreported Income for 1989
Utilizing the bank deposits and cash expenditures method of income reconstruction, respondent determined that petitioners had $ 54,630 of unreported income. Petitioners argue that respondent's determination is erroneous. Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. Where a taxpayer does not maintain sufficient records, the Commissioner is authorized by section 446 to recompute the taxpayer's income using any reasonable method. Petzoldt v. Commissioner, supra at 687. The use of the bank deposits and cash expenditures method of income reconstruction has been approved by this Court. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). *274 Furthermore, we have held that once the Commissioner has determined that unexplained deposits and expenditures constitute income, the burden of proving her determination erroneous rests with the taxpayer. Parks v. Commissioner, supra; Nicholas v. Commissioner, supra.
The major component of respondent's income reconstruction statement was the currency confiscated from petitioners on September 2, 1989. In the notice of deficiency, respondent listed the amount confiscated as $ 46,004. Now, however, respondent concedes that the amount confiscated was only $ 43,004. [3] Thus, respondent alleges that petitioners failed to report income of $ 51,630, computed as follows: Forfeited portion of cash
$ 24,602 Cash returned to petitioners
18,402 Nondeductible living expenses
15,774 Bank deposits
165 Less:
Income on 1989 return
$ 5,430
1988 Tax refund
1,598
Bank withdrawals
285
(7,313)
Unreported Income:
51,630 *275 Petitioners' only argument with the foregoing income reconstruction is that the $ 43,004 confiscated from them on September 2, 1989, was not their money. Thus, as to the undisputed items included in the foregoing computation, we treat them as resolved. [4] Rule 149(b); Petzoldt v. Commissioner, 92 T.C. at 692. Petitioners claim that the $ 43,004 belonged to Horacio Trevino Valdez (Trevino), who is the vice mayor of Reynosa, Tamaulipas, Mexico. Trevino is not subject to the subpoena power of the Court, and thus is an "unavailable" witness. Petitioners contend that Trevino gave them the money to purchase street-cleaning equipment. In support of their position, petitioners offered an affidavit [5] from Trevino, in which *276 Trevino acknowledged that the confiscated money belonged to him and that petitioner husband was only a courier of the money. We found Trevino's uncontroverted affidavit, in conjunction with petitioner husband's testimony on this point, to be partly credible. That is, we believe petitioner husband was a courier; we doubt that the product was street-cleaning equipment. Consequently, we do not believe that the entire $ 43,004 was unreported income to petitioners. However, petitioner husband admitted that he was working for Trevino on a commission basis, although he did not disclose the amount of the commission. Thus, we believe that some portion of the $ 43,004 was income to petitioners. In cases of unreported income, it may be appropriate for the Court to make estimates of the amount of income that the taxpayer has not reported, applying *277 principles analogous to those set forth in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Accordingly, when we are convinced that some portion of the alleged unreported income was, in fact, chargeable to the taxpayer, we may estimate the amount of such income even in the absence of precise records and testimony, bearing heavily upon the taxpayer who is responsible for the uncertainty. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973); see Llorente v. Commissioner, 74 T.C. 260, 268 (1980), revd. on other grounds 649 F.2d 152, 157 (2d Cir. 1981). Here, petitioner husband was commissioned by Trevino to consummate a business transaction that involved over $ 40,000. Accordingly, we estimate that petitioner husband received a $ 5,000 commission. However, as to the remaining portion of the alleged unreported income, we hold that petitioners have met their burden of proof; they have demonstrated that such money belonged to Trevino. Issue 3. Whether Petitioners Are Liable for an Addition to Tax Under Section 6662(a)
Respondent determined *278 an addition to petitioners' tax for 1989 under section 6662(a) in the amount of $ 3,000.79. Petitioners assert that they are not liable for such addition to tax. Section 6662 imposes an accuracy-related penalty on a substantial understatement of income tax. The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 20 percent of the amount of any underpayment attributable to such understatement. The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6662(a) is erroneous. Rule 142(a). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6662(d)(1)(A). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6662(d)(2)(A). The understatement is reduced, however, to the extent it is: (1) Based on substantial authority or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6662(d)(2)(B)(i) and (ii). Petitioners made no arguments regarding the *279 substantial understatement addition to tax; therefore, petitioners have failed to carry their burden of proof. If the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioners will be liable for that addition to tax. To reflect the foregoing and the concession made by respondent, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Court of Appeals for the Fifth Circuit applies this principle "whether the unreported income was allegedly obtained legally or illegally." Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68↩.
3. Respondent's concession comports with the Agreed Judgment of Forfeiture, which indicates that $ 43,004 was subject to the judgment -- $ 24,602 was forfeited to Jim Wells County, Tex. and $ 18,402 was returned to petitioner.↩
4. Respondent used Bureau of Labor statistics to compute petitioners' personal living expenses. We have approved the use of such statistics when reconstructing a taxpayer's income. See Giddio v. Commissioner, 54 T.C. 1530, 1533↩ (1970).
5. At trial, respondent agreed not to object to the introduction of the affidavit, subject to respondent's right to call petitioners as witnesses in the Government's case-in-chief.↩