Johnny **WEIMERSKIRCH,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent-Appellee.

No. 77–2129.

United States Court of Appeals,
Ninth Circuit.

May 2, 1979.

Richard P. Algeo, Spokane, Wash., for petitioner-appellant.

Myron C. Baum, Washington, D.C., for respondent-appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

## J. BLAINE ANDERSON, Circuit Judge:

The Commissioner issued a 90-day letter claiming that Weimerskirch had not reported income he allegedly received from selling heroin. Weimerskirch petitioned the Tax Court for redetermination of the deficiency. 26 U.S.C. § 7442, *et seq.* After the Tax Court upheld the deficiency determination, Weimerskirch appealed to this court. 26 U.S.C. § 7482.

The Tax Court held that Weimerskirch had failed to rebut the Commissioner's presumption of correctness which attaches to a deficiency determination. *Johnny Weimerskirch,* 67 T.C. 672 (1977). We find that the Commissioner was not entitled to rely solely upon the presumption of correctness and reverse.

---

\* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. At the trial Weimerskirch called an Internal Revenue Service (IRS) agent who testified that he had reconstructed Weimerskirch's income by the following method: Weekly sales of 70 quarter spoons of heroin at $30.00 per quarter spoon, creating gross weekly sales revenue of $2,100.00. The cost of the heroin was figured at $900.00 per week, resulting in a $1,200.00 weekly net income. It was determined that

## FACTS

Weimerskirch reported income of $5,762.00 on his income tax return for 1972. The Commissioner issued a statutory notice of deficiency claiming that Weimerskirch had $24,608.00 of additional income which he had failed to report. This resulted in a total tax liability of $8,994.00 plus a penalty of $1,453.75. Weimerskirch petitioned the Tax Court for a redetermination of the deficiency.

Little in the way of substantive evidence was introduced at trial to either prove or disprove what Weimerskirch's taxable income was for 1972. Weimerskirch called four witnesses and by stipulation introduced the tax return which he had filed for 1972. The Commissioner called no witnesses and introduced no evidence.

Weimerskirch's mother testified that she and her husband gave him at least $1,900.00, including $370.00 in wages, as well as gifts or groceries, during 1972. The tax return which Weimerskirch had filed showed his 1972 income as $5,762.00, with $370.00 from wages and $5,392.00 from other income. This was the only substantive evidence which tended to prove or disprove what Weimerskirch's income was for 1972.[1]

## STANDARD OF REVIEW

On appeal, findings of fact made by the Tax Court are not overturned unless they are "clearly erroneous." *Rockwell v. C.I.R.,* 512 F.2d 882, 884 (9th Cir. 1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386; *Caratan v. C.I.R.,* 442 F.2d 606, 609 (9th Cir. 1971). A finding is clearly erroneous when this court is "left with the defi-

Weimerskirch sold heroin for 25 weeks so that his income for the period was $30,000.00. The Tax Court held that this testimony was not admissible as substantive proof that Weimerskirch had unreported income from narcotics sales, but that it was admissible only to show the method by which the Commissioner made the deficiency determination. 67 T.C. at 674–675. The testimony was admissible for this limited purpose. *See Avery v. C.I.R.,* 574 F.2d 467, 468 (9th Cir. 1978).

nite and firm conviction that a mistake has been committed." *C.I.R. v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960). The determination by the Tax Court that Weimerskirch received income from the heroin sales was a finding of fact, and as such may only be overturned on review if it is clearly erroneous. *See Gerardo v. C.I.R.*, 552 F.2d 549, 552 (3d Cir. 1977); *Herbert v. C.I.R.*, 377 F.2d 65, 71 (9th Cir. 1967).

## QUESTION PRESENTED

■ The only issue which we address is whether the Commissioner was entitled to rely upon the presumption of correctness on the facts of this particular case.[2] The Tax Court upheld the Commissioner's deficiency determination on the basis that Weimerskirch had failed to overcome the presumption of correctness. On appeal, the Commissioner argues that "[i]t is elementary that in a Tax Court suit, the Commissioner's deficiency determination is presumptively correct. . . ."[3] Commissioner's brief at 13. However, before the Commissioner can rely on this presumption of correctness, the Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity. *United States v. Janis*, 428 U.S. 433, 441–442, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Suarez v. United States*, 582 F.2d 1007, 1010 n. 3 (5th Cir. 1978); *Carson v. United States*, 560 F.2d 693, 696–698 (5th

**2.** Weimerskirch also challenges the Tax Court's refusal to disclose the names of two confidential informers who had furnished information to the IRS. Additionally, he challenges the court's refusal to allow examination of the IRS agent's notes and work papers which the agent had used to refresh his memory prior to testifying. An examination of these notes and papers would have revealed the identity of the two informants. The Tax Court examined the documents *in camera* before refusing to allow their disclosure.

In view of our decision, and after examining these notes and papers, we conclude that the denial of disclosure of the names and the documents was not an abuse of discretion in this case. *See Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Anderson*, 509 F.2d 724 (9th Cir. 1975), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831,

Cir. 1977); *Gerardo, supra*, 552 F.2d at 554–555. This was not done in the present case.

## DISCUSSION

In *Janis, supra*, the Supreme Court decided that the exclusionary rule did not prevent the Internal Revenue Service (IRS) from using illegally-seized evidence as the basis from which to extrapolate a taxpayer's unreported income from wagering activities. Prior to addressing the exclusionary question, the Court stated that if the illegally-seized evidence could not be used, then the result would be:

"a 'naked' assessment without *any* foundation whatsoever . . . . The determination of tax due then may be one 'without rational foundation and excessive,' and not properly subject to the usual rule with respect to the burden of proof in tax cases." (citations and footnotes omitted)

428 U.S. at 441, 96 S.Ct. at 3026. The Court noted that there was apparently some conflict between the Federal Courts of Appeals as to the burden of proof in tax cases, and then went on to make these observations:

"However that may be, the debate does not extend to the situation where the assessment is shown to be naked and without *any* foundation.

\*   \*   \*   \*   \*   \*

"Certainly, proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous."

42 L.Ed.2d 840. Since there may have been some confusion about what the *in camera* evidence could be used for (see Clerk's Record at 62), we note that this court's examination was limited to the question of whether disclosure was required. Without disclosure, such evidence cannot be used as evidence to support the Commissioner's deficiency determination. *See generally Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) (discussed *infra* at n. 8).

**3.** Because of our conclusion that the Commissioner was not entitled to rely upon the presumption at all, we do not reach the question as to who has the general burden of persuasion in this type of case. *See Rockwell v. Commissioner*, 512 F.2d 882 (9th Cir. 1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386.

428 U.S. at 442, 96 S.Ct. at 3026. While the quoted language may not have been dispositive of the issue decided in *Janis, supra*, it certainly is a strong indication that the Commissioner must offer some foundational support for the deficiency determination before the presumption of correctness attaches to it. After all, as the Court observed in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), ". . . as a practical matter it is never easy to prove a negative . . . ." 364 U.S. at 218, 80 S.Ct. at 1444. *See also Flores v. United States*, 551 F.2d 1169, 1175 (9th Cir. 1977).

█ A Tax Court decision finding unreported income from gambling activities was reversed in *Gerardo, supra*, because of the lack of any evidence to support the Commissioner's presumption of correctness.[4] The court reasoned as follows:

". . . in order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in gambling activity during the period covered by the assessment. Without that evidentiary foundation, minimal though if [sic] may be, an assessment may not be supported even where the taxpayer is silent. (citations omitted)

"While we realize the difficulties which the Commissioner encounters in assessing deficiencies in circumstances such as are presented here, we nevertheless must insist that the Commissioner provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be

given his presumption of correctness. Here, the record is barren of that underlying evidence . . . ."

552 F.2d at 554–555. Even though Weimerskirch did not testify in the present case, following the teachings of *Gerardo, supra*, the Commissioner still cannot rely on the presumption in the absence of a minimal evidentiary foundation.

In another case involving failure to report income from wagering activities, the Fifth Circuit was faced with a factual situation analogous to that presented here. *Carson, supra*. The court rejected the government's attempt to rely solely upon the presumption of correctness[5] and said:

"Such a position, which would support the most arbitrary of assessments so long as the taxpayer found himself unable to prove a negative, frequently difficult in quite innocent circumstances, does not become the government's agents, and we readily reject it."

560 F.2d at 698. Even the most innocent of persons would have difficulty in disproving such a serious charge as selling heroin, when the party making the charge was not required to present *any* evidence.[6]

*CONCLUSION*

The Commissioner offered no evidence linking Weimerskirch to the sale of narcotics, or to the sale of heroin. There was no evidence from which it could even be inferred that he engaged in these activities, let alone for a 25-week period during 1972. No records were introduced to substantiate the computations made by the IRS agent.

4. The Commissioner's deficiency determination covering a later period of gambling activities was upheld. However, there was sufficient substantive evidence to support the Commissioner's determination for the subsequent period. *Gerardo, supra*, 552 F.2d at 553.

5. In *Carson, supra*, the court found that the deficiency determination for another period of wagering activities was not clearly erroneous where there was sufficient substantive evidence to support the presumption. 560 F.2d at 698.

6. The court described the effect of the requirement that the Commissioner must provide

some substantive evidence to support the deficiency determination as follows:

"Neither tax collection in general nor wagering activities in particular, however, have ever been thought wholly to excuse the government from providing some factual foundation for its assessments. The tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact."

*Carson, supra*, 560 F.2d at 696.

Additionally, the Commissioner did not attempt to substantiate the charge of unreported income by any other means, such as by showing Weimerskirch's net worth, bank deposits, cash expenditures, or source and application of funds. Instead, the Commissioner merely chose to rely upon the naked assertion that Weimerskirch made $30,-000.00 from the sale of heroin during 1972. In view of the total absence of any substantive evidence in the record which could support the Commissioner's deficiency determination, we are left with the firm conviction that the Tax Court erred in finding that the presumption of correctness attached to the deficiency determination.[7] A deficiency determination which is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous.[8]

The reason for the requirement that there must be some evidentiary foundation linking the taxpayer to the alleged income-producing activity is especially acute where, as here, the government asserts that the taxpayer was engaged in an activity which is otherwise illegal. This is particularly true when the illegal activity is not only morally reprehensible, but also punishable by an extended prison sentence. By its allegation that a taxpayer has unreported income from the sale of narcotics, the government is affixing a label, a label which in this case reads "heroin pusher." To allow the government to do this without offering any probative evidence linking the taxpayer to the activity runs afoul of every notion of fairness in our system of law.

The decision of the Tax Court is REVERSED.

---

7. The present case is readily distinguishable from this court's recent decision in *Avery v. C.I.R.*, 574 F.2d 467 (9th Cir. 1978). In *Avery*, the Commissioner was allowed to rely upon the presumption of correctness after making a deficiency determination which claimed that the taxpayer had failed to report income from the sale of heroin. The following evidence not only established the necessary foundation for the presumption but also rebutted the taxpayer's contrary testimony: (1) taxpayer had been convicted on charges stemming from her heroin sales during this period; (2) a DEA agent testified about actual purchases he had made from the taxpayer; (3) the taxpayer made statements about her heroin business to the DEA agent; and (4) the taxpayer had made several expensive purchases during the period in question.

8. We also note that the requirement that the Commissioner make a sufficient showing of substantive evidence to support the deficiency determination before the presumption of correctness attaches to the determination is gener-

ally consistent with the approach which has been taken when a taxpayer seeks injunctive relief after the IRS has seized property pursuant to a jeopardy assessment for income taxes. *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). In order to obtain an injunction against the collection of any tax, a taxpayer must show: (1) it is clear that under no circumstances could the government ultimately prevail, and (2) equity jurisdiction otherwise exists because the taxpayer will otherwise suffer irreparable injury. *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). In *Shapiro, supra*, the IRS had made a tax assessment based on the taxpayer's alleged sale of hashish. The Supreme Court agreed with the taxpayer that the government had an obligation to disclose the factual basis for the assessment. 424 U.S. at 626–627, 96 S.Ct. 1062. Otherwise, the taxpayer could never satisfy the requirement for injunctive relief that under no circumstances could the government prevail.